**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

CAROLYN NOLEN, WINDY KELLEY,
CARA KELLEY and PAULA LITTON,
on behalf of themselves and all others
similarly situated,                                              CASE NO.: _____

       Plaintiffs,

v.

WYNDHAM VACATION RESORTS, INC.;
FAIRSHARE VACATION OWNERS
ASSOCIATION; and RCI, LLC;

       Defendants.
_____/

## CLASS ACTION COMPLAINT

The Plaintiffs Carolyn Nolen, Windy Kelley, Cara Kelley and Paula Litton, state the following as their causes of action against all the above named Defendants:

### JURISDICTION AND VENUE

1.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1332(d), the Class Action Fairness Act of 2005("CAFA") because: (1) "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs," (2) the action is pled as a class action involving more than 100 putative class members, and (3) "any member of a class of plaintiffs is a citizen of a State different from any defendant."

### THE PARTIES

2.      Wyndham Vacation Resorts, Inc. ("WVR"), is a Delaware Corporation with its principal place of business in Parsippany, New Jersey.

1

3.    Fairshare Vacation Owners Association (the "Trustee"), is an Arkansas Corporation with its principal place of business located in Orlando, Florida.

4.    RCI, LLC ("RCI"), is a Delaware Limited Liability Company with its principal place of business in Parsippany, New Jersey.

5.    WVR, Fairshare Vacation Owners Association and RCI are all subsidiaries or affiliates of Wyndham Worldwide Corporation.  All of the Defendants are tightly related and act as one enterprise.  Further, each Defendant serves as the agent of each of the other Defendants.

6.    Plaintiffs Carolyn Nolen, Windy Kelley, Cara Kelley and Paula Litton, are resident citizens of the State of Alabama.

## WVR'S TIMESHARE BUSINESS

7.    WVR is one of the world's largest – if not the largest - seller of vacation timeshares and has captured all aspects of the timeshare industry.  WVR sells timeshares, finances timeshare purchases, and manages timeshare properties.

8.    WVR's timeshare business is based on marketing timeshare sales to thousands upon thousands of people.  Consumers purchase a timeshare interest in one of WVR's 200 resorts. WVR has sold approximately 900,000 timeshare interests under this business model.

9.    The consumer's timeshare interest is most typically represented in points.  Under this points system, consumers buy points and then redeem those points in exchange for the right to stay at a WVR property.

10.    WVR's timeshare business operates under four different brands:  Club Wyndham, WorldMark by Wyndham, Wyndham Vacation Resorts Asia Pacific, and Shell Vacations Club. Although WVR operates separate brands, it has integrated all the business functions, including

consumer finance, information technology, staffing, resort management, product development, and marketing activities into one seamless enterprise managed and controlled by WVR.

11.     At the time a consumer purchases a timeshare interest, WVR require the consumer to place the entire timeshare interest or the equivalent points into a trust created by and fully managed by WVR. This Trust is governed by the Fairshare Vacation Plan Use Management Trust Agreement (the "Fairshare Trust"). The terms of the Fairshare Trust have been amended several times since its formation.

12.     WVR is the largest timeshare business in the world as measured by revenues. These staggering revenues are derived from four primary sources.

13.     First, WVR aggressively markets its timeshare business to prospective buyers through a variety of channels including, telemarketing, resort-based sale centers, and mailings. Once WVR convinces a consumer to purchase a timeshare interest, it markets "upgrades" to that customer. "Upgrades" to existing timeshare customers represented approximately 70% of WVR's timeshare sales during 2012, 2013, and 2014.

14.     Second, WVR generates substantial profits by financing and re-financing timeshare purchases. WVR finances approximately 50% of the timeshare interests it sells at above market interest rates. WVR finances these purchases for 10 years. As part of WVR's financing arrangement, WVR also requires consumers to make a down payment or in some instances to finance the entire timeshare purchase using a WVR sponsored credit card.

15.     Third, WVR charges all timeshare owners a variety of maintenance fees. These fees are paid to WVR or an affiliated entity and allow WVR to shift the operating costs of its resorts back to the timeshare owners. The fees are allegedly used to pay operating expenses, to maintain the properties, and to cover insurance and taxes for the timeshare properties.

16.    Fourth, WVR facilitates the exchanges of its timeshare properties through a timeshare exchange program operated by RCI, an affiliated entity.  RCI does not own anything. Instead, it merely serves as a "middleman."  Timeshare owners pay WVR an annual membership fee to participate in the RCI program.  In addition, each time a consumer transfers or exchanges points, WVR charges the consumer an exchange fee.  WVR uses RCI to generate a substantial profit stream for itself.

## THE NOLEN TRANSACTION

17.    On July 31, 2015, Plaintiff, Carolyn Nolen, and her former husband, purchased a timeshare from WVR (Contract Number 00126-1518153).

18.    The purchase price for Ms. Nolen's new WVR timeshare contract was $20,900.00. Ms. Nolen paid the purchase price using a WVR sponsored credit card and a PayPal transaction initiated and collected by WVR.  The introductory interest rate on this credit card was 0% for six months and then 14.99% on annual basis.  WVR had its hand in every dollar used by Ms. Nolen for the purchase of the new contract.

19.    WVR assessed $164.80 in settlement charges and a $349.00 processing fee to Ms. Nolen in connection with the purchase of her timeshare contract.

20.    The total cost of Ms. Nolen's purchase was $21,413.80, all financed through WVR.

21.    WVR required Ms. Nolen, and every timeshare purchaser, to assign 100% of their timeshare interest to Club Wyndham Plus.  The Club Wyndham Plus program is governed by the terms of the Fairshare Trust.

22.    By assigning her timeshare interest to the Fairshare Trust, Ms. Nolen transferred all rights in the timeshare to the Fairshare Trust.  Consequently, the Fairshare Trust gained all right to assign possession and use rights of Ms. Nolan's timeshare interest to other timeshare owners in

the Club Wyndham Plus program. As a result of this assignment, Ms. Nolen was required to pay an Annual Fairshare Assessment which was $849.53 in 2018 and $888.04 in 2019. These assessments were charged to Ms. Nolen's WVR sponsored credit card.

23.    WVR also required Ms. Nolen, and all other timeshare purchasers, to become members of the Fairshare Vacation Owners Association and subjected Ms. Nolen to all of the Fairshare Vacation Owners Association's rules and regulations.

24.    WVR also automatically enrolled Ms. Nolen in the RCI exchange program.

### THE KELLEY/LITTON TRANSACTION

25.    On January 5, 2016, Plaintiffs Windy Kelley, Cara Kelley and Paula Litton purchased a timeshare from WVR (Contract Number 00219-1600048).

26.    The gross purchase price for the Kelleys' and Ms. Litton's new WVR timeshare contract was $316,000.00. The Kelleys and Ms. Litton paid the $207,047.98 purchase price through a trade-in of existing timeshare points and by financing the remaining balance with WVR. WVR had its hand in every dollar used by the Kelleys and Ms. Litton for the purchase of the new contract.

27.    To purchase the new WVR contract, the Kelleys and Ms. Litton traded in existing WVR timeshare points. WVR valued these points at $144,501.30. WVR was the sole determiner of the value of the Kelleys' and Ms. Litton's existing timeshare points.

28.    After the trade-in of existing points, the Kelleys and Ms. Litton still owed $62,156.30 to WVR. WVR financed this balance through its credit subsidiary over 10 years at an annual interest rate of 11.49%. WVR assessed a $30 closing fee and a $349.00 processing fee to the Kelleys and Ms. Litton.

29.     WVR required the Kelleys and Ms. Litton, and every timeshare purchaser, to assign 100% of their timeshare interest to Club Wyndham Plus.  The Club Wyndham Plus program is governed by the terms of the Fairshare Trust.

30.     By assigning their timeshare interest to the Fairshare Trust, the Kelleys and Ms. Litton transferred all rights in the timeshare to the Fairshare Trust.  Consequently, the Fairshare Trust gained all right to assign possession and use rights of the Kelleys and Ms. Litton's timeshare interest to other timeshare owners in the Club Wyndham Plus program.  As a result of this assignment, the Kelleys and Ms. Litton were required to pay an Annual Fairshare Assessment which was $601.45 in 2017.

31.     WVR also required the Kelleys and Ms. Litton, and all other timeshare purchasers, to become members of the Fairshare Vacation Owners Association and subjected the Kelleys and Ms. Litton to all of the Fairshare Vacation Owners Association's rules and regulations.

32.     WVR also automatically enrolled the Kelleys and Ms. Litton in the RCI exchange program.

## **CLUB WYNDHAM PLUS**

33.     The Fairshare Trust is believed to have become effective on June 26, 1991.  The Fairshare Trust and its subsequent amendments were drafted by attorneys representing WVR.  Through the years, the Fairshare Trust has been amended.  The current version of the Fairshare Trust became effective on March 14, 2008.

34.     The Fairshare Trust property consists of all property interests and use rights purchased by WVR's timeshare owners.  Just like Ms. Nolen, the Kelleys and Ms. Litton, these consumers purchased their individual timeshare interests and were required to assign those interests back to the Fairshare Trust.

35.    The Trustee of the Fairshare Trust is the Fairshare Vacation Owners Association, an Arkansas corporation that is entirely controlled by WVR.  This fact was not disclosed to the Plaintiffs or to other consumers when they purchased their timeshare interests.

36.    According to its terms, the only beneficiaries of the Fairshare Trust are the individual timeshare owners and WVR.

37.    To gain complete control over the Trust, WVR serves as the Fairshare Trust's Plan Manager.  Additionally, executive level management with WVR are the only individuals who have been allowed to serve as Officers and Directors of the Trustee.  These individuals, who upon information and belief are not WVR timeshare owners, have controlled the activity of the Fairshare Trust at the direction and control of WVR and its affiliated entities.  Examples of these actions include approving amendments to the Fairshare Trust and to the Bylaws of the Fairshare Vacation Owners Association that resulted in substantial financial and management benefits to WVR and its affiliated entities.

38.    The Fairshare Vacation Owners Association's Bylaws and the Fairshare Trust appoint WVR as the Plan Manager for the Trust.  The Fairshare Vacation Owners Association's Bylaws and the Fairshare Trust give the Board of Directors the right to change any program or feature at will, even if the changes are not in the best interests of the timeshare owners, who are beneficiaries of the Fairshare Trust.  During the relevant time period, the Fairshare Vacation Owners Association's Board of Directors consisted of three members; all executives of WVR.  The Fairshare Vacation Owners Association's Bylaws require that at all times at least three of the Fairshare Vacation Owners Association's Board members must be appointed by WVR or its affiliated entities.  To gain control over the Fairshare Vacation Owners Association and the Fairshare Trust, WVR or its affiliated entities appointed its own executives and employees to

control the actions of the Trustee. This resulted in tremendous financial benefits to WVR and its affiliated entities.

39.     With only three individual employees of WVR controlling and directing the actions of the Trustee, WVR's control over the Fairshare Trust is absolute.   The result is that Defendant Fairshare Vacation Owners Association possesses carte blanche authority to modify, interpret, change, and/or amend the Fairshare Vacation Owners Association's Bylaws, the terms of the Fairshare Trust, any property Management Agreements, fees, benefits, and virtually any other provision of the Club Wyndham Plus Program. While legally charged to do so only in the best interests of the beneficiaries of the Fairshare Trust, the Fairshare Vacation Owners Association's directors have a fiduciary responsibility to refuse to make decisions that benefit WVR to the detriment of the Fairshare Trust's beneficiaries, including Plaintiffs.  As provided herein, Defendant Fairshare Vacation Owners Association made decisions that financially benefited WVR and its affiliated entities and caused financial harm to Plaintiffs and other timeshare owners in violation of the Arkansas Trust Code (the "Trust Code").

40.     The express terms of the Fairshare Trust require that all beneficiaries – except WVR – pay a "Fairshare Plus Assessment."

41.     The Fairshare Plus Assessment consists of the sum of a "Program Fee" and an "OA Fee."

42.     The Program Fee is set by WVR and approved by the Trustee. The Fairshare Trust provides that the Program Fee shall amount to what is needed to cover the cost of the operation and administration of the Fairshare Trust. The Program Fee is also used to cover the operation, maintenance, repair and replacement of the Fairshare Trust's properties. Upon information and belief, the Program Fee greatly exceeds the amount necessary to cover the cost of the operation

and administration of the Fairshare Trust and the operation, maintenance, repair and replacement of the Fairshare Trust's properties. Upon information and belief, the Program Fee results in substantial profits to WVR.

43.    The end result of the Fairshare Plus Assessment is that Plaintiffs and individual beneficiaries of the Fairshare Trust are forced to pay the fees to cover the operation of the Fairshare Trust and its properties while WVR is exempted from paying its share of the Fairshare Plus Assessment. WVR and its affiliated entities receive a substantial financial benefit by exempting WVR from payment of the Fairshare Plus Assessment. As Trustee, the Fairshare Vacation Owners Association's decision to exempt WVR from paying the Fairshare Plus Assessment constitutes, *inter alia*,: (1) a violation of the duty of loyalty; (2) a conflict of interest and (3) a breach of its fiduciary duty to the beneficiaries of the Trust. Further, the amount of the Fairshare Plus Assessment is determined solely by WVR – the largest beneficiary of the Trust, who also directs and controls the actions of the Trustee, the Fairshare Vacation Owners Association.

44.    The Fairshare Trust was formed in Arkansas and the terms of the Fairshare Trust require it be construed in accordance with the laws of the State of Arkansas.

## **CLASS ALLEGATIONS**

45.    Plaintiffs bring this action as a class action under Federal Rule of Civil Procedure 23 and propose the following class:

46.    The Proposed Class is defined as:

> All persons and entities who are citizens of the United States of America and who on or after March 14, 2008: (1) purchased a timeshare with a Property Interest (or the Use Rights therein) subject to the Fairshare Vacation Plan Use Management Trust or (2) purchased (including upgrading or refinancing) a Property Interest (or the Use Rights therein) previously subject to the Fairshare Vacation Plan Use Management Trust.

47.    Excluded from the proposed Class are members of the judiciary, entities currently in bankruptcy, entities whose obligations have been discharged in bankruptcy, and governmental entities. Also excluded from the above Class are Defendants, including any entity in which Defendants have a controlling interest, are a parent or subsidiary, or which are controlled by Defendants, as well as the officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns of Defendants.

48.    This action is brought and may properly be maintained as a class action pursuant to Fed.R.Civ.P. 23(a),(b)(1),(2),(3) and (c)(4).  This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of these rules.

49.    Plaintiff maintains the right to create additional subclasses or classes, if necessary, and to revise this definition to maintain a cohesive class that does not require individual inquiry to determine liability.

50.    The exact number of class members is unknown to Plaintiff at this time, but such information can be ascertained through appropriate discovery, specifically from records maintained by the Defendants.  Upon information and belief, the number of putative members of the class exceeds 1,000 persons and entities.

## EXISTENCE AND PREDOMINANCE OF COMMON QUESTIONS OF LAW AND FACT

51.    There are common questions of law and fact common and of general interest to the Class.  These common questions of law and fact predominate over any questions affecting only individual members of the class.  Such common questions include, but are not limited to, the following:

      a.  Whether WVR engages in self-dealing by profiting from the financing and refinancing of timeshare interests held in the Fairshare Trust over which an

affiliated entity serves as the Trustee;

b.   Whether WVR engages in self-dealing by charging timeshare owners a "processing fee" and a "closing fee" for processing financing applications and closing transactions related to timeshare interests held in the Fairshare Trust over which an affiliated entity serves as Trustee;

c.   Whether WVR engages in self-dealing by charging class members for exchanges of timeshare interests through its affiliate or subsidiary, RCI;

d.   Whether Fairshare Vacation Owners Association violated its duties as Trustee under Arkansas Trust law by assessing the Fairshare Plus Assessment against every other Trust beneficiary except WVR;

e.   Whether WVR's Fairshare Plus Assessment was fair and reasonable to the beneficiaries of the Fairshare Trust;

f.   Whether WVR used the Fairshare Plus Assessment as a means to unfairly profit at the expense of the beneficiaries of the Fairshare Trust;

g.   Whether the Fairshare Plus Assessment bears any relation to WVR's actual costs;

h.   Whether the Fairshare Vacation Owners Association pays itself unreasonable fees to serve as Trustee for the Fairshare Trust;

i.   Whether a conflict of interest exists between the Trustee, Fairshare Vacation Owners Association, and the beneficiaries of the Fairshare Trust;

j.   Whether WVR and the Trustee, Fairshare Vacation Owners Association, operate the Fairshare Trust as a profit enhancer for WVR against the interests of all other beneficiaries of the Fairshare Trust;

k. Whether WVR has misrepresented facts about the purposes of the Fairshare Trust;

l. Whether WVR has omitted or suppressed material facts about the Fairshare Trust and the purpose of the Fairshare Trust;

m. Whether WVR, Fairshare Vacation Owners Association and RCI violated the Arkansas Trust Code;

n. Whether Fairshare Vacation Owners Association breached its fiduciary duties;

o. Whether WVR, Fairshare Vacation Owners Association and RCI profited from transactions involving property of the Fairshare Trust;

p. Whether Plaintiffs and class members are entitled to class relief as requested herein.

## TYPICALITY AND NUMEROSITY

52. The claims of Plaintiffs are typical of the claims of the Class. WVR's common course of conduct caused Plaintiffs and all proposed class members the same harm. WVR's conduct caused Plaintiffs and each class member economic harm. Upon information and belief, the total number of members of the proposed class exceeds 1,000 members and is so numerous that separate joinder of each member is impracticable.

## ADEQUATE REPRESENTATION

53. Plaintiffs will fairly and adequately protect the interests of the members of the Class and have no interests antagonistic to those of other class members, and the Court should appoint Plaintiffs as the class representative. Plaintiffs have retained class counsel competent to prosecute class actions, and the Court should appoint Plaintiffs' counsel as Class Counsel.

## SUPERIORITY

54.    The Class may be properly maintained under Fed.R.Civ.P. 23.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy since individual joinder of all members of the class is impracticable.  The interests of judicial economy favor adjudicating the claims for the class rather than on an individual basis.  The class action mechanism provides the benefit of unitary adjudication, economies of scale, and comprehensive supervision by a single court.

55.    Questions of law and fact predominate over any questions affecting only individual members.

## COUNT 1
### Defendant Trustee, Fairshare Vacation Owners Association, Committed Multiple Violations of the Arkansas Trust Code

56.    The Arkansas Trust Code requires that "[a] trustee *shall* administer the trust *solely* in the interests of the beneficiaries.  Ark. Code Ann. § 28-73-802(a) (emphasis added)."  The Trust Code further provides that "[a] trust and it terms must be for the benefit of its beneficiaries."  Ark. Code Ann. § 28-73-404.

57.    The Arkansas Trust Code further presumes any transaction between a corporate trustee and an entity related to the corporate trustee that involves trust property to be a self-dealing transaction affected by a conflict of interest:

(c)    A sale, encumbrance, or other transaction involving the investment or management of trust property is presumed to be affected by a conflict between personal and fiduciary interests if it is entered into by the trustee with:

(4)    a corporation or other person or enterprise in which the trustee, or a person who owns a significant interest in the trustee, has an interest that might affect the trustee's best judgment.

Ark. Code Ann. § 28-73-802 (c)(4).

13

58.     Section 28-73-1003 of the Trust Code prohibits a trustee from profiting from a trust, *even absent a breach of trust*.  The trustee is simply never allowed to profit from its role as trustee.

59.     Defendant Trustee, Fairshare Vacation Owners Association, violated Ark. Code Ann. §§ 28-73-404, 28-73-802, and 28-73-1003 in four ways.  First, Defendant Trustee Fairshare Vacation Owners Association entered into a Management Agreement with an affiliated entity. Second, Defendant Trustee Fairshare Vacation Owners Association profits from Trust property by financing and re-financing Trust property at the expense of Trust beneficiary timeshare owners like Plaintiff.  Third, Defendant Trustee Fairshare Vacation Owners Association uses Trust property to enrich its affiliate Defendant RCI, LLC, at the expense of Trust beneficiary timeshare owners.  Fourth, Defendant Trustee Fairshare Vacation Owners Association charges timeshare owners like Plaintiffs excessive fees which has led to it realizing a Trust Fund Balance that is not shared with Trust beneficiaries like Plaintiffs.

**The Management Agreement**

60.     Defendant Fairshare Vacation Owners Association serves as the Trustee of the Fairshare Trust.  The actions of the Trustee are governed by a three-member board.[1]  Since the inception of the Trust, every member of the board has been an employee of WVR or a related entity.  No outsiders or timeshare owners have ever been allowed to serve on the board.

61.     Defendant Trustee Fairshare Vacation Owners Association charges Trust beneficiary timeshare owners like Plaintiffs what is known as a Program Fee.

---

[1] During the applicable time period, the directors of the Defendant Trustee's Board were senior executives or employees of WVR or an affiliated entity.

62.     Each month beginning on September 14, 2015, Plaintiff Nolen paid the Program Fee  Each month beginning on February 17, 2016 Plaintiff Kelleys and Plaintiff Litton paid the Program Fee.

63.     Importantly, while Plaintiffs and the individual beneficiaries of the Fairshare Trust are forced to pay the Program Fee, Defendant WVR is exempted from paying any Program Fees. Defendant WVR and its affiliated entities receive a substantial financial benefit by exempting Defendant WVR from the payment of Program Fees.

64.     On January 1, 1996, Defendant Trustee Fairshare Vacation Owners Association, entered into a Management Agreement with Defendant WVR.[2]  The Management Agreement provides that WVR "shall provide or cause to be provided all services and personnel required to administer the affairs of the Trust and to manage and operate the Trust Property as contemplated by the Trust Agreement, at all times not inconsistent with the Trust Agreement. . .".

65.     Upon information and belief, Defendant Trustee, Fairshare Vacation Owners Association, failed to submit the Management Agreement to any unaffiliated parties for a competitive bidding process.  Instead, Defendant Trustee, Fairshare Vacation Owners Association, entered into the Management Agreement with its affiliate WVR.

66.     The Management Agreement requires the Fairshare Trust to pay its affiliate Defendant WVR fees for managing Fairshare Trust property.  Defendant WVR bills the Fairshare Trust for reservation services, exchange services, financial services, owner services, managing the inventory of the Fairshare Trust, housekeeping services, and additional management fees.

---

[2] The Management Agreement was originally entered into with Fairfield Communities, Inc., a predecessor company to WVR.

67. The Fairshare Trust uses the Program Fee collected from Trust beneficiaries, like Plaintiffs, to pay Defendant WVR under the Management Agreement. Virtually, all the money collected as Program Fees is funneled to Defendant WVR under the Management Agreement.

68. Defendant Trustee, Fairshare Vacation Owners Association's, decision to allow its affiliate WVR to manage the property of the Fairshare Trustwas not for the benefit of the Trust's beneficiaries like Plaintiffs and members of the putative class. Instead, Defendant Trustee, Fairshare Vacation Owners Association's, decision to enter into the Management Agreement with Defendant WVR was to financially enrich Defendant WVR at the expense of the Trust's beneficiaries.

69. Defendant Trustee, Fairshare Vacation Owners Association's, conduct in entering into the Management Agreement with its affiliate Defendant WVR violated Ark. Code Ann. §§ 28-73-802, 28-73-404, and 28-73-1003.

### Consumer Financing and Re-Financing

70. All consumer financing and re-financing arrangements necessarily involve property of the Fairshare Trust that is solely controlled by Defendant Trustee, Fairshare Vacation Owners Association. All consumer financing and re-financing arrangements by timeshare owners are financed by Defendant WVR – a related or affiliated entity of the Fairshare Trust and the Defendant Trustee, Fairshare Vacation Owners Association. On July 31, 2015, Plaintiff Nolen financed the $20,900.00 purchase price of her timeshare contract with WVR. Plaintiff Nolen paid the purchase price using a WVR sponsored credit card and a PayPal transaction initiated and collected by WVR with an annual interest rate of 14.99%. Plaintiff Nolen paid $164.80 in settlement charges and a $349.00 processing fee assessed by WVR in connection with the purchase of her timeshare contract.

71.     On January 5, 2016, Plaintiffs Kelleys and Litton financed the $207,047.98 purchase price of their timeshare contract with WVR.  Plaintiffs Kelleys and Litton also traded-in existing timeshare points, which were property of the Fairshare Trust, toward the purchase price. WVR undervalued Plaintiffs Kelleys' and Litton's timeshare points that were traded in.  WVR financed the remaining balance of Plaintiffs Kelleys' and Litton's purchase price through its credit subsidiary over 10 years at an annual interest rate of 11.49%.  WVR assessed a $30 closing fee and a $349.00 processing fee to the Kelleys and Ms. Litton.

72.     Defendant Trustee, Fairshare Vacation Owners Association's, conduct in financing and re-financing Trust property violated Ark. Code Ann. §§ 28-73-802, 28-73-404, and 28-73-1003.

**The RCI Program**

73.     The Defendant RCI, LLC, is affiliated with the Defendant Trustee, Fairshare Vacation Owners Association.

74.     Defendant Trustee Fairshare Vacation Owners Association allows Defendant RCI to operate a timeshare exchange program using property belonging to the Fairshare Trust. Defendant RCI and WVR charge a fee for each timeshare exchange.  Therefore, the more properties enrolled in the RCI program the more opportunity to generate exchange fees.  The exchange fees generated by the RCI program are not shared with beneficiaries of the Fairshare Trust, even though the RCI program relies on using Trust property to facilitate these exchanges.

75.     Defendant RCI entered into a series of agreements with Defendant Trustee Fairshare Vacation Owners Association.  The purpose of these agreements was to steer Fairshare Trust beneficiaries into the RCI program.  Once in the RCI program, Fairshare Trust beneficiaries pay Defendants RCI and WVR annual membership fees, transfer fees and exchange fees.

76.     Plaintiff Nolen paid an RCI membership fee and transfer fee.  Plaintiffs Kelley and Litton paid an RCI membership fee.  In addition to requiring beneficiaries of the Fairshare Trust to pay additional fees, membership in RCI requires the Fairshare Trust's property to be pledged to Defendants RCI and WVR.  Once pledged, Defendants RCI and WVR exchange a Fairshare Trust beneficiary's interest with other interests enrolled in the program.

77.     Plaintiffs Kelley and Litton never received any income or distribution from the Fairshare Trust as a result of the revenue generated from use of Fairshare Trust property in the RCI exchange program.

78.     Defendant Trustee, Fairshare Vacation Owners Association's, policy of automatically enrolling Fairshare Trust beneficiaries in the RCI program and using Fairshare Trust properties to generate exchange fee revenue for Defendant RCI, an affiliated entity, violated Ark. Code Ann. §§ 28-73-802, 28-73-404, and 28-73-1003.

**The Trust Fund Balance**

79.     Despite the statutory rule prohibiting a trustee from profiting, Defendant Trustee, Fairshare Vacation Owners Association, has accumulated a positive trust fund balance from excess Program Fees and revenue collected from Plaintiffs and Trust beneficiaries.  This trust fund balance is currently held by Defendant Trustee, Fairshare Vacation Owners Association, for its own use.

80.     Despite possessing a positive trust fund balance, Defendant Trustee, Fairshare Vacation Owners Association, continues to increase the amount of Program Fees and revenue it collects or receives from Plaintiffs and the beneficiaries of the Fairshare Trust.  None of the money being held by Defendant Trustee, Fairshare Vacation Owners Association, in the trust fund balance is shared or credited to Plaintiffs or the beneficiaries of the Fairshare Trust; even though, all of the

18

trust fund balance was generated from revenue received from beneficiaries of the Fairshare Trust and is related to or is property of the Fairshare Trust.

81.    Defendant Trustee, Fairshare Vacation Owners Association's, retention of the excess trust fund balance constitutes a violation of Ark. Code Ann. §§ 28-73-802, 28-73-404, and § 28-73-1003.

82.    As a result of Defendant Trustee, Fairshare Vacation Owners Association's, violations of Ark. Code Ann. §§ 28-73-404, 28-73-802 and 28-73-1003, Plaintiffs and members of the putative class have been damaged by paying excessive Program Fees and excessive financing rates and charges.  Plaintiffs and members of the putative class have been further damaged by paying membership fees, transfer fees and exchange fees to participate in the RCI exchange program.  Finally, Plaintiffs and members of the putative class have been damaged by failing to receive any income or distributions from the Fairshare Trust as a result of revenue generated from the use of Fairshare Trust property in the RCI exchange program.  Absent any actual damage, Plaintiffs and members of the putative class are entitled to disgorgement of all excess funds and profits obtained by Defendant Trustee, Fairshare Vacation Owners Association, as a result of its violations of the Arkansas Trust Code as more specifically set out in paragraphs 56 through 81 above.

WHEREFORE,  premises considered, Plaintiffs and members of the proposed class pray for a judgment against Defendant Trustee, Fairshare Vacation Owners Association, for disgorgement of profits, compensatory damages in excess of the jurisdiction of this Court, for punitive damages, for costs of suit and for such other and further relief as the Court may deem just and proper.

## COUNT 2

### Defendant WVR Committed Multiple Violations of the Arkansas Trust Code

83.    The Arkansas Trust Code requires that "[a] trustee *shall* administer the trust *solely* in the interests of the beneficiaries.  Ark. Code Ann. § 28-73-802(a) (emphasis added)."  The Trust Code further provides that "[a] trust and it terms must be for the benefit of its beneficiaries."  Ark. Code Ann. § 28-73-404.

84.    The Arkansas Trust Code further presumes any transaction between a corporate trustee and an entity related to the corporate trustee that involves trust property to be a self-dealing transaction affected by a conflict of interest:

(c)   A sale, encumbrance, or other transaction involving the investment or management of trust property is presumed to be affected by a conflict between personal and fiduciary interests if it is entered into by the trustee with:

(4)   a corporation or other person or enterprise in which the trustee, or a person who owns a significant interest in the trustee, has an interest that might affect the trustee's best judgment.

Ark. Code Ann. § 28-73-802 (c)(4).

85.    Section 28-73-1003 of the Trust Code prohibits a trustee's affiliated entity from profiting from the use of trust property, *even absent a breach of trust*.  The trustee and its affiliates are never allowed to profit from the trustee's role as trustee.

86.    Defendant WVR violated Ark. Code Ann. §§ 28-73-404, 28-73-802, and 28-73-1003 in four ways.  First, Defendant WVR entered into a Management Agreement with its affiliate the Defendant Trustee Fairshare Vacation Owners Association.  Second, Defendant WVR profits from Trust property controlled by its affiliate Defendant Trustee Fairshare Vacation Owners Association by financing and re-financing Trust property at the expense of Trust beneficiary timeshare owners like Plaintiff.  Third, Defendant WVR uses Trust property to enrich itself and its

affiliate Defendant RCI, LLC, at the expense of Trust beneficiary timeshare owners. Fourth, Defendant WVR uses loans secured by Trust property as security for loans used to operate its own business. Defendant WVR is able to use loans secured by Trust property as security for lower interest loans it uses in its own operations.

**The Management Agreement**

87.      Defendant WVR violated Ark. Code Ann. §§ 28-73-802(c) and 28-73-1003 by entering into Management Agreement with its affiliate Defendant Trustee, Fairshare Vacation Owners Association. The Management Agreement allows WVR to profit from property of the Fairshare Trust. Under the terms of the Management Agreement WVR bills its affiliate the Fairshare Trust for reservation services, exchange fees, financial services, owner services, managing the inventory of the Fairshare Trust, housekeeping, and additional management fees.

88.      All bills submitted by WVR to the Fairshare Trust under the Management Agreement are paid by the Program Fee levied on timeshare owners like Plaintiffs. Notwithstanding that WVR is an affiliate of the Trustee Fairshare Vacation Owners Association, the Management Agreement results in Defendant WVR profiting from the management of Trust property at the expense of Trust beneficiaries like the Plaintiffs.

89.      Defendant WVR's conduct in entering into the Management Agreement with its affiliate Defendant Trustee Fairshare Vacation Owners Association violated Ark. Code Ann. §§ 28-73-802, 28-73-404, and 28-73-1003.

**Consumer Financing and Re-Financing**

90.      All consumer financing and re-financing arrangements necessarily involve property of the Fairshare Trust that is solely controlled by Defendant Trustee, Fairshare Vacation Owners Association.

91.     All consumer financing and re-financing arrangements by timeshare owners are financed by Defendant Trustee Fairshare Vacation Owners Association's affiliate, Defendant WVR. .

92.     On July 31, 2015, Plaintiff Nolen financed the $20,900.00 purchase price of her timeshare contract with WVR.  Plaintiff Nolen paid the purchase price using a WVR sponsored credit card and a PayPal transaction initiated and collected by WVR with an annual interest rate of 14.99%.  Plaintiff Nolen paid $164.80 in settlement charges and a $349.00 processing fee assessed by WVR in connection with the purchase of her timeshare contract.

93.     On January 5, 2016, Plaintiffs Kelleys and Litton financed the $207,047.98 purchase price of their timeshare contract with WVR.  Plaintiffs Kelleys and Litton also traded-in existing timeshare points, which were property of the Fairshare Trust, toward the purchase price. WVR undervalued Plaintiffs Kelleys' and Litton's timeshare points that were traded in.  WVR financed the remaining balance of Plaintiffs Kelleys' and Litton's purchase price through its credit subsidiary over 10 years at an annual interest rate of 11.49%.  WVR assessed a $30 closing fee and a $349.00 processing fee to the Kelleys and Ms. Litton.

94.     Defendant WVR's parent corporation's 2014 Annual 10-K Filing admits that financing to purchasers of WVR's timeshares "generates substantial incremental revenues and profits."   Moreover, WVR's parent corporation's 2016 Annual 10-K Filing admits that WVR's long term debt obligations were financed at 2.95% to 7.375% - substantially lower than the 11.49% to 14.99% interest rates charged to Plaintiffs.  These "substantial incremental revenues and profits" constitute a violation of Ark. Ann. Code § 28-73-1003.  As an affiliated corporate entity of Defendant Trustee, Fairshare Vacation Owners Association, WVR is simply never allowed to profit from transactions involving property of the Fairshare Trust.

95.     Defendant WVR's conduct related to the financing and re-financing of timeshare interests held in trust by its affiliate Defendant Trustee Fairshare Vacation Owners Association violated Ark. Code Ann. §§ 28-73-802, 28-73-404, and 28-73-1003.

**Securitization of Trust Assets**

96.     Defendant WVR securitizes large pools of consumer time share loans which it then sells. The income from the securitization practice is used to finance WVR's and its parent corporation's operations. WVR pools large groups of its timeshare loans involving Fairshare Trust property as security for loans it uses to fund its own operations. The interest paid by Defendant WVR on its debt is lower than the interest collected by Defendant WVR from timeshare owners. For instance, WVR's long term debt obligations were financed at 2.95% to 7.375% - substantially lower than the 11.49% to 14.99% interest rates charged to Plaintiffs. *See* 2016 Annual 10-K Filing for Wyndham Worldwide Corporation, at F-29.97. None of the income from Defendants' securitization agreements is shared with the beneficiaries of the Fairshare Trust. Fairshare Trust beneficiaries receive no benefit from Defendant WVR's securitization schemes even though it is the Fairshare Trust beneficiaries' loans on Fairshare Trust property that enable the securitization practices. Defendant WVR's securitization practices place the interests of WVR in direct conflict with the Fairshare Trust beneficiaries. Defendant WVR's securitization scheme motivates it to finance timeshare purchases at higher interest rates. The higher interest rate loans are more enticing to outside investors because of the potentially large return on investment. Additionally, Defendant WVR's securitization practices motivate it to finance and re-finance as many consumer loans as possible so that pools of loans can be packaged and sold.

97.     Defendant WVR's securitization schemes violated Ark. Code Ann. §§ 28-73-802, 28-73-404, and 28-73-1003.

**RCI Program**

98.     Defendant WVR facilitates Defendant RCI's timeshare exchange program. Defendant WVR automatically enrolled Plaintiffs as well as all beneficiaries of the Fairshare Trust in the RCI exchange program.  RCI is wholly owned and operated by WVR or its parent or affiliated entities and is fully integrated into the WVR timeshare enterprise.  Defendant RCI entered into a series of agreements with Defendant WVR and Defendant Fairshare.  The purpose of these agreements was to steer the Fairshare Trust's beneficiaries into the RCI program.  Once in the RCI program, the Fairshare Trust beneficiaries must pay Defendants RCI and WVR annual membership fees and exchange fees.

99.     In addition to requiring Fairshare Trust beneficiaries to pay additional fees, membership in RCI requires the Fairshare Trust beneficiary's Trust property be pledged to Defendants RCI and WVR.  Once pledged, Defendants RCI and WVR exchange the Fairshare Trust beneficiary's interest with other interests enrolled in the program.  Defendant RCI charges a fee for each exchange, and Defendant WVR collects those fees.  Therefore, the more properties enrolled in the RCI program the more opportunity for Defendant WVR to generate exchange fees. The exchange fees generated by the RCI program are not shared with the Fairshare Trust beneficiaries, even though the RCI program relies on using Fairshare Trust property to facilitate these exchanges.  Defendant WVR also collects a fee for the transfer of any points from the Fairshare Trust to RCI.

100.     Defendant WVR's conduct related to the RCI program violated Ark. Code Ann. §§ 28-73-802, 28-73-404, and 28-73-1003.

101.     As a result of Defendant WVR's violations of Ark. Code Ann. §§ 28-73-404, 28-73-802(a), 28-73-802(c)(4) and 28-73-1003, Plaintiffs and members of the putative class have

been damaged by paying Program Fees, late fees, guest certificate fees and other excessive and unnecessary fees to WVR, by entering into financing agreements with WVR that contain excessive interest rates, by failing to receive any of the revenue from the WVR's loan securitization program and by paying RCI membership fees, exchange fees and transfer fees. Absent any actual damage, Plaintiffs and members of the putative class are entitled to disgorgement of all excess funds and profits obtained by Defendant RCI as a result of its violations of the Arkansas Trust Code as more specifically set out in paragraphs 83 through 100 above.

WHEREFORE, premises considered, Plaintiffs and members of the proposed class pray for a judgment against Defendant WVR for disgorgement of profits, compensatory damages in excess of the jurisdiction of this Court, for punitive damages, for costs of suit and for such other and further relief as the Court may deem just and proper.

## COUNT 3

### Defendant RCI Committed Multiple Violations of the Arkansas Trust Code

102.    The Arkansas Trust Code requires that "[a] trustee *shall* administer the trust *solely* in the interests of the beneficiaries. Ark. Code Ann. § 28-73-802(a) (emphasis added)." The Trust Code further provides that "[a] trust and it terms must be for the benefit of its beneficiaries." Ark. Code Ann. § 28-73-404.

The Arkansas Trust Code presumes any transaction between a corporate trustee and an entity related to the corporate trustee that involves trust property to be a self-dealing transaction affected by a conflict of interest:

(c)    A sale, encumbrance, or other transaction involving the investment or management of trust property is presumed to be affected by a conflict between personal and fiduciary interests if it is entered into by the trustee with:

> (4)   a corporation or other person or enterprise in which the trustee, or a person who owns a significant interest in the trustee, has an interest that might affect the trustee's best judgment.

Ark. Code Ann. § 28-73-802 (c)(4).

103.   Section 28-73-1003 of the Trust Code prohibits a trustee's affiliated entity from profiting from the use of trust property, even absent a breach of trust.  The trustee and its affiliates are never allowed to profit from the trustee's role as trustee.

104.   Defendant RCI violated Ark. Code Ann. §§ 28-73,404, 28-73-802, and 28-73-1003 in two ways.  First, all Trust beneficiaries are required to enroll their timeshare interest in the RCI program.  Enrollment requires the Trust beneficiary to pay a membership fee and exchange fees to RCI.  Second, RCI utilizes property of the Fairshare Trust in its timeshare exchange program. RCI exchanges the timeshare interests held in the Fairshare Trust and charges a membership fee and an exchange fee to facilitate the exchanges.  Even though the exchanges rely on Trust property, none of the fees charged by RCI are shared with the Trust beneficiaries.

### Mandatory RCI Enrollment

105.   Defendant RCI is an affiliate of Defendant Trustee Fairshare Vacation Owners Association and Defendant WVR.  Defendant RCI entered into a series of agreements with Defendant WVR and Defendant Trustee Fairshare Vacation Owners Association to steer the Fairshare Trust's beneficiaries into the RCI program.   Once in the RCI program, Trust beneficiaries are required to pay Defendants RCI and WVR annual membership fees and exchange fees.

106.   Defendant WVR automatically enrolled Plaintiffs as well as all beneficiaries of the Fairshare Trust in the RCI exchange program.  RCI is wholly owned and operated by WVR or its parent or affiliated entities and is fully integrated into the WVR timeshare enterprise.

**RCI's Use Of Trust Property**

107.    In addition to requiring Trust beneficiaries to pay membership and exchange fees, membership in RCI requires the Fairshare Trust beneficiary's Trust property be pledged to Defendants RCI and WVR.

108.    Once pledged, Defendants RCI and WVR exchange the Fairshare Trust beneficiary's interest with other interests enrolled in the program.  Defendant RCI charges a fee for each exchange.  Therefore, the more properties enrolled in the RCI program the more opportunity for Defendants to generate exchange fees.

109.    Defendant RCI also charges a fee for the transfer of any points from the Fairshare Trust to RCI.

110.    The exchange fees generated by the RCI program are not shared with Fairshare Trust beneficiaries, even though the RCI program relies on using Fairshare Trust property to facilitate these exchanges.

111.    As a result of Defendant RCI's violations of Ark. Code Ann. §§ 28-73-404, 28-73-802,and 28-73-1003, Plaintiffs and members of the putative class have been damaged by paying RCI membership fees, exchange fees and transfer fees.  Plaintiffs and members of the putative class have been further damaged by failing to receive any income or distributions from the Fairshare Trust as a result of revenue generated from the use of Fairshare Trust property in the RCI exchange program.  Absent any actual damage, Plaintiffs and members of the putative class are entitled to disgorgement of all excess funds and profits obtained by Defendant RCI as a result of its violations of the Arkansas Trust Code as more specifically set out in paragraphs 103 through 110 above.

WHEREFORE, premises considered, Plaintiffs and members of the proposed class pray for a judgment against Defendant RCI for disgorgement of profits, compensatory damages in excess of the jurisdiction of this Court, for punitive damages, for costs of suit and for such other and further relief as the Court may deem just and proper.

## COUNT 4

### Defendant Trustee, Fairshare Vacation Owners Association, Breached The Fiduciary Duty it Owed to Plaintiffs

112.    By virtue of being Trustee, Defendant Fairshare Vacation Owners Association owed the beneficiaries of the Fairshare Trust the utmost fiduciary duty.  Defendant Trustee, Fairshare Vacation Owners Association's, involvement in Defendant WVR's consumer financing operation, the RCI exchange program and the Fairshare Assessment constitutes a breach of the fiduciary duty it owed to Plaintiffs and the beneficiaries of the Fairshare Trust.

113.    On July 31, 2015, Plaintiff Nolen financed the $20,900.00 purchase price of her timeshare contract with WVR.  Plaintiff Nolen paid the purchase price using a WVR sponsored credit card and a PayPal transaction initiated and collected by WVR with an annual interest rate of 14.99%.  Plaintiff Nolen paid $164.80 in settlement charges and a $349.00 processing fee assessed by WVR in connection with the purchase of her timeshare contract.  Each month beginning on September 14, 2015, Plaintiff Nolen paid the Program Fee.  Plaintiff Nolen paid an RCI membership fee and transfer fee.

114.    On January 5, 2016, Plaintiffs Kelleys and Litton financed the $207,047.98 purchase price of their timeshare contract with WVR.  Plaintiffs Kelleys and Litton also traded-in existing timeshare points, which were property of the Fairshare Trust, toward the purchase price.  WVR undervalued Plaintiffs Kelleys' and Litton's timeshare points that were traded in.  WVR financed the remaining balance of Plaintiffs Kelleys' and Litton's purchase price through its credit

subsidiary over 10 years at an annual interest rate of 11.49%. WVR assessed a $30 closing fee and a $349.00 processing fee to the Kelleys and Ms. Litton. Each month beginning on February 17, 2016, Plaintiff Kelleys and Plaintiff Litton paid the Program Fee. Plaintiffs Kelley and Litton paid an RCI membership fee.

115. Defendant Trustee, Fairshare Vacation Owners Association's, involvement in Defendant WVR's consumer financing operation, the RCI exchange program and the Fairshare Assessment was purposefully designed to increase the revenue and profits of Defendant WVR, an affiliated entity, at the expense of Plaintiffs and the beneficiaries of the Fairshare Trust. Defendant Trustee, Fairshare Vacation Owners Association's, decision to enter into a Management Agreement with an affiliated entity, Defendant WVR, as opposed to engaging in a competitive bidding process was a breach of its fiduciary duty to Plaintiffs and the beneficiaries of the Fairshare Trust.

116. Defendant Trustee, Fairshare Vacation Owners Association, consciously and deliberately disregarded the duty it owed to Plaintiffs and the beneficiaries of the Fairshare Trust.

117. As a proximate consequence of said breaches, Plaintiffs and members of the putative class have suffered the financial losses described above.

WHEREFORE, premises considered, Plaintiff and members of the proposed class pray for a judgment against Defendant Trustee, Fairshare Vacation Owners Association, for compensatory damages in excess of the jurisdiction of this Court, for punitive damages, for costs of suit and for such other and further relief as the Court may deem just and proper.

## COUNT 5

### Defendant Trustee, Fairshare Vacation Owners Association, Operated the Trust in a Negligent Manner

118.    Defendant Trustee, Fairshare Vacation Owners Association, owed – and continues to owe – a duty to Plaintiffs and the members of the proposed class to use reasonable care in discharging its duties as Trustee of the Fairshare Trust.  This duty arises from its respective position and from the terms of the Fairshare Trust.

119.    On July 31, 2015, Plaintiff Nolen financed the $20,900.00 purchase price of her timeshare contract with WVR.  Plaintiff Nolen paid the purchase price using a WVR sponsored credit card and a PayPal transaction initiated and collected by WVR with an annual interest rate of 14.99%.  Plaintiff Nolen paid $164.80 in settlement charges and a $349.00 processing fee assessed by WVR in connection with the purchase of her timeshare contract.  Each month beginning on September 14, 2015, Plaintiff Nolen paid the Program Fee.  Plaintiff Nolen paid an RCI membership fee and transfer fee.

120.    On January 5, 2016, Plaintiffs Kelleys and Litton financed the $207,047.98 purchase price of their timeshare contract with WVR.  Plaintiffs Kelleys and Litton also traded-in existing timeshare points, which were property of the Fairshare Trust, toward the purchase price.  WVR undervalued Plaintiffs Kelleys' and Litton's timeshare points that were traded in.  WVR financed the remaining balance of Plaintiffs Kelleys' and Litton's purchase price through its credit subsidiary over 10 years at an annual interest rate of 11.49%.  WVR assessed a $30 closing fee and a $349.00 processing fee to the Kelleys and Ms. Litton.  Each month beginning on February 17, 2016, Plaintiff Kelleys and Plaintiff Litton paid the Program Fee.  Plaintiffs Kelley and Litton paid an RCI membership fee.

121.    Defendant Trustee, Fairshare Vacation Owners Association, has a common law

duty to prevent foreseeable risk of harm to others, including Plaintiffs and the members of the proposed class.  As beneficiaries of the Fairshare Trust, Plaintiffs and the putative class are members of a well-defined, foreseeable, finite, and discernable group which was well-known and identifiable to Defendant Trustee, Fairshare Vacation Owners Association, before its conduct caused the harm at issue.

122.    Further, it was foreseeable that Defendant Trustee, Fairshare Vacation Owners Association's failure to properly exercise its powers and faithfully discharge its duties would result in economic injury to Plaintiffs and the putative class members.

123.    Defendant Trustee, Fairshare Vacation Owners Association's, involvement in Defendant WVR's consumer financing operation, the RCI exchange program and the Fairshare Assessment was negligent.  Defendant Trustee, Fairshare Vacation Owners Association's, decision to enter into a Management Agreement with an affiliated entity, Defendant WVR, as opposed to engaging in a competitive bidding process also constitutes negligence.

124.    In connection with the conduct described above, Defendant Trustee, Fairshare Vacation Owners Association, acted wantonly, recklessly, and with complete disregard for the consequences.

125.    As a direct and proximate result of Defendant Trustee, Fairshare Vacation Owners Association's negligence, Plaintiffs and the members of the proposed class have suffered and continue to suffer injury.

WHEREFORE, premises considered, Plaintiff and members of the proposed class pray for a judgment against Defendant Trustee, Fairshare Vacation Owners Association, for compensatory damages in excess of the jurisdiction of this Court, for costs of suit and for such other and further relief as the Court may deem just and proper.

31

## COUNT 6

**Defendant Trustee, Fairshare Vacation Owners Association, Breached the Implied Duty of Good Faith and Fair Dealing Owed to Trust Beneficiaries**

126.    Implicit in the Fairshare Trust and in Defendant Fairshare Vacation Owners Association's role as Trustee is a duty of good faith and fair dealing. This implied duty prevents one party from exercising judgment in such a manner as to evade the spirit of the transaction or to deny the other party the expected benefits of the contract.

127.    On July 31, 2015, Plaintiff Nolen financed the $20,900.00 purchase price of her timeshare contract with WVR. Plaintiff Nolen paid the purchase price using a WVR sponsored credit card and a PayPal transaction initiated and collected by WVR with an annual interest rate of 14.99%. Plaintiff Nolen paid $164.80 in settlement charges and a $349.00 processing fee assessed by WVR in connection with the purchase of her timeshare contract. Each month beginning on September 14, 2015, Plaintiff Nolen paid the Program Fee. Plaintiff Nolen paid an RCI membership fee and transfer fee.

128.    On January 5, 2016, Plaintiffs Kelleys and Litton financed the $207,047.98 purchase price of their timeshare contract with WVR. Plaintiffs Kelleys and Litton also traded-in existing timeshare points, which were property of the Fairshare Trust, toward the purchase price. WVR undervalued Plaintiffs Kelleys' and Litton's timeshare points that were traded in. WVR financed the remaining balance of Plaintiffs Kelleys' and Litton's purchase price through its credit subsidiary over 10 years at an annual interest rate of 11.49%. WVR assessed a $30 closing fee and a $349.00 processing fee to the Kelleys and Ms. Litton. Each month beginning on February 17, 2016, Plaintiff Kelleys and Plaintiff Litton paid the Program Fee. Plaintiffs Kelley and Litton paid an RCI membership fee.

129.    Defendant Trustee, Fairshare Vacation Owners Association, owed a duty of good faith and fair dealing to the Trust beneficiaries, including Plaintiffs and members of the putative class.

130.    Defendant Trustee, Fairshare Vacation Owners Association's, involvement in Defendant WVR's consumer financing operation, the RCI exchange program and the Fairshare Assessment constitutes a breach of the duty of good faith and fair dealing.  Defendant Trustee, Fairshare Vacation Owners Association's, decision to enter into a Management Agreement with an affiliated entity, Defendant WVR, as opposed to engaging in a competitive bidding process was a breach of the duty of good faith and fair dealing owed to Plaintiffs and the beneficiaries of the Fairshare Trust.

131.    Defendant Trustee, Fairshare Vacation Owners Association, breached its implied duty of good faith and fair dealing by evading the spirit of the transaction by assessing, collecting or ultimately receiving the financial benefit of the excessive fees charged to Plaintiffs and members of the putative class.  Moreover, by engaging in the misleading and deceptive practices described herein, Defendant Trustee, Fairshare Vacation Owners Association, has successfully taken advantage of Plaintiffs and members of the proposed class.

WHEREFORE,  premises considered, Plaintiffs and members of the proposed class pray for a judgment against Defendant Trustee, Fairshare Vacation Owners Association, for compensatory damages in excess of the jurisdiction of this Court, for costs of suit and for such other and further relief as the Court may deem just and proper.

## COUNT 7

**Defendant WVR Has Been Unjustly Enriched at the Expense of Timeshare Owners**

132.     Defendant WVR has been unjustly enriched at the expense of Plaintiffs because of its actions in assessing, collecting or ultimately receiving the financial benefit of the excessive Program Fees, late fees, guest certificate fees, housekeeping fees, RCI membership fees, RCI exchange fees and other fees charged to Plaintiffs and members of the putative class.

133.     Each month beginning on September 14, 2015, Plaintiff Nolen paid the Program Fee.  Each month beginning on February 17, 2016, Plaintiff Kelleys and Plaintiff Litton paid the Program Fee.  Plaintiff Nolen paid an RCI membership fee and transfer fee.  Plaintiffs Kelley and Litton paid an RCI membership fee.  Plaintiffs and members of the putative class paid some or all of the late fees, guest certificate fees and housekeeping fees charged by WVR.

134.     The value of the benefit received by Defendant WVR, whereby it has been unjustly enriched, is equivalent to the monies collected by Defendant WVR from Plaintiffs and members of the putative class.

135.     Plaintiff seeks the imposition of a constructive trust on all proceeds assessed, collected or ultimately received by Defendant WVR associated with the excessive Program fees, late fees, guest certificate fees, housekeeping fees, RCI membership fees, RCI exchange fees and other fees charged to Plaintiffs and members of the proposed class.

WHEREFORE, premises considered, Plaintiff and members of the proposed class pray for a judgment against Defendant WVR for compensatory damages in excess of the jurisdiction of this Court, for punitive damages, for costs of suit and for such other and further relief as the Court may deem just and proper.

## COUNT 8

**Defendant RCI Has Been Unjustly Enriched at the Expense of Timeshare Owners**

136.    Defendant RCI has been unjustly enriched at the expense of Plaintiffs because of its actions in assessing, collecting or ultimately receiving the financial benefit of the excessive RCI membership fees and RCI timeshare exchange fees charged to Plaintiff and members of the putative class as well as rental income and exchange fees obtained by using the Fairshare Trust's property as part of the RCI program.

137.    Defendant RCI entered into a series of agreements with Defendant Trustee Fairshare Vacation Owners Association.  The purpose of these agreements was to steer Fairshare Trust beneficiaries into the RCI program.  Once in the RCI program, Fairshare Trust beneficiaries pay Defendants RCI and WVR annual membership fees, transfer fees and exchange fees.

138.    Plaintiff Nolen paid an RCI membership fee and transfer fee.  Plaintiffs Kelley and Litton paid an RCI membership fee.  In addition to requiring beneficiaries of the Fairshare Trust to pay additional fees, membership in RCI requires the Fairshare Trust's property to be pledged to Defendants RCI and WVR.  Once pledged, Defendants RCI and WVR exchange a Fairshare Trust beneficiary's interest with other interests enrolled in the program.

139.    Plaintiffs Kelley and Litton never received any income or distribution from the Fairshare Trust as a result of the revenue generated from use of Fairshare Trust property in the RCI exchange program.

140.    The value of the benefit received by Defendant RCI, whereby it has been unjustly enriched, is equivalent to the monies collected by Defendant RCI from Plaintiffs and members of the putative class.

141.    Plaintiff seeks the imposition of a constructive trust on all proceeds assessed, collected or ultimately received by Defendant RCI, associated with the excessive membership fees and exchange fees charged to Plaintiffs and members of the proposed class as well all proceeds received from rental or exchange fee income generated using the Fairshare Trust's property.

WHEREFORE, premises considered, Plaintiff and members of the proposed class pray for a judgment against Defendant RCI for compensatory damages in excess of the jurisdiction of this Court, for punitive damages, for costs of suit and for such other and further relief as the Court may deem just and proper.

## COUNT 9

### Defendant Trustee, Fairshare Vacation Owners Association, Defendant WVR and Defendant RCI Conspired to Utilize the Trust to Enrich Themselves at the Expense of Trust Beneficiaries

142.    All Defendants are parties to a civil conspiracy.

143.    All Defendants conspired to violate the Arkansas Trust Code and to engage in the other unlawful, immoral, oppressive, unfair and deceptive acts outlined above.

144.    All Defendants knew or should have known that Plaintiff and members of the putative class were beneficiaries of the Fairshare Trust and therefore should have been protected as a matter of law from self-dealing, breach of fiduciary duty, breach of implied duty of good faith and fair dealing, breach of the duty of loyalty, bias or unfairness.

145.    All Defendants knowingly entered into the conspiracy by committing overt acts, such as placing entities and individuals controlled, employed or owned by WVR in positions of authority and decision making over the Fairshare Trust, the Fairshare Vacation Owners Association and RCI.  These actions establish a meeting of the minds in furtherance of the Defendants' conspiracy.

146.    Defendant Trustee, Fairshare Vacation Owners Association entered into the conspiracy for its own financial benefit and Defendant RCI entered into the conspiracy for its own financial benefit.

147.    All Defendants' conspiracy and their overt acts caused Plaintiffs and members of the putative class to suffer damages.

WHEREFORE,  premises considered, Plaintiffs and members of the proposed class pray for a judgment against Defendants for compensatory damages in excess of the jurisdiction of this Court, for punitive damages, for costs of suit and for such other and further relief as the Court may deem just and proper.

Dated: February 25, 2020                    Respectfully submitted,

/s/ John A. Yanchunis
JOHN A. YANCHUNIS – **Trial Counsel**
Florida Bar No. 324681
jyanchunis@ForThePeople.com
PATRICK A. BARTHLE II
Florida Bar No. 99286
pbarthle@ForThePeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 223-5505
Facsimile: (813) 223-5402

James M. Terrell*, Application for Admission Pursuant to L.R. 2.02(a) to be filed*
jterrell@mtattorneys.com
Rodney E. Miller, *Application for Admission Pursuant to L.R. 2.02(a) to be filed*
rmiller@mtattorneys.com
METHVIN, TERRELL, YANCEY,
STEPHENS & MILLER, P.C.
2201 Arlington Ave. S
Birmingham, AL 35205
Telephone: (205) 939-0199
Facsimile:  (205) 939-0399

Bradford D. Barron, *Application for*
*Admission Pursuant to L.R. 2.02(a) to be*
*filed*
bbarron@barronlawfirmok.com
The Barron Law Firm, PLLC
P.O. Box 369
Claremore, Ok 74018
Telephone: (918) 341-8402
Facsimile:  (918) 515-4691

*Attorneys for Plaintiffs*

**PLEASE SERVICE DEFENDANTS BY CERTIFIED MAIL:**

Wyndham Vacation Resorts, Inc.
Registered Agent:  CORPORATE CREATIONS NETWORK INC.
11380 Prosperity Farms Road #221E
Palm Beach Gardens, FL 33410

Fairshare Vacation Owners Association
6277 Sea Harbor Dr
Orlando, FL 32821

RCI, LLC
7 Sylvan Way
Parsippany, NJ 07054